UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:02 CR 44 |
| | ) | |
| WILLIAM DAVISON | ) | |

## OPINION AND ORDER

Defendant William Davison has filed a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2). (DE # 688.) Mr. Davison was convicted of two counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the time of Mr. Davison's original sentencing, his guideline offense level was found to be 40, and criminal history category of I, which corresponded to a guideline range of 292 to 365 months imprisonment. The court sentenced Mr. Davis to a term of 360 months imprisonment.

Mr. Davison was also charged with conspiracy to distribute crack cocaine, and although he was found not guilty of that charge, in the original presentence report ("PSR") at paragraph 24, the probation office concluded there was sufficient evidence to conclude he engaged in a jointly undertaken criminal enterprise, was a member of the conspiracy, and that distribution of in excess of 1.5 kilograms of crack cocaine was foreseeable to him. (DE # 678-1 at 7.) When the court sentenced him, it found that he was a member of the conspiracy "at least from 1997 up to and including the date . . . of his arrest," which occurred in June, 2002. (Tr. of October 23, 2003, sentencing hearing at 80.) The court also found his role in the conspiracy was as a street-level distributor, and "[m]ore likely than not, he was a shooter," that is, he had been involved, as either an

accomplice or the actual triggerman, in murders carried out in furtherance of the conspiracy. (*Id*.) Last, the court concluded that he was responsible for "[w]ay in excess of 1.5 kilograms of crack cocaine base." (*Id*. at 81.)

At the time of Mr. Davison's sentencing, any consideration as to how greatly in excess of 1.5 kilograms he bore responsibility was unnecessary, because the sentencing guidelines set a quantity of 1.5 kilograms of crack cocaine as the threshold for the maximum base offense level of 38. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2003). Mr. Davison's adjusted offense level was 40 as the result of a two-level increase for possession of a dangerous weapon. (Tr. of October 23, 2003, sentencing hearing at 80-82; *see also* DE # 678 at 2.)

Mr. Davison moved for a reduced sentence in 2009 after the United States Sentencing Commission promulgated Amendment 706, which, generally speaking, lowered the sentencing range for offenses involving crack by two levels. (DE # 579.) As the result of Amendment 706, a quantity of 4.5 kilograms of crack cocaine became the threshold for the maximum base offense level. The court denied that motion after determining that Mr. Davison was responsible for in excess of 4.5 kilograms of crack, and therefore, he was not eligible for a sentence reduction. (DE # 602.) Mr. Davison appealed, and the United States Court of Appeals for the Seventh Circuit affirmed this court's decision. (DE # 666-1); *see also United States v. Davis,* 682 F.3d 596, 619-20 (7th Cir. 2012).

Mr. Davison has now moved for a sentence reduction under Amendment 750.[1] (DE # 688.) Amendment 750 raised the threshold for the maximum base offense level of 38 to 8.4 kilograms of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). The court is authorized to reduce a sentence only when a defendant's sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The relevant policy statement here provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if . . . [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(2)(B) (2013).

In his motion for a reduced sentence under Amendment 750, Mr. Davison concedes that due to the court's ruling on his motion for a reduced sentence under Amendment 706, he "is clearly responsible for an amount of crack cocaine that exceeds 4.5 kilograms." (DE # 688 at 3.) Mr. Davison argues, however, that because the court has never made a finding that he is responsible for 8.4 kilograms or more of crack cocaine, the court should find him responsible for less than 8.4 kilograms of crack, which would

---

[1] The court requested an addendum to the PSR from the United States Probation Office. (DE # 677.) The United States Probation Office concluded that Mr. Davison is not eligible for a reduction. (DE # 678.)

result in a base offense level of 36.[2] (*Id.*) After adding the two-level increase for the firearms violation, Mr. Davison argues that his total offense level should be 38. (*Id.*) A total offense level of 38, with a criminal history category of one, results in a guideline range of 235-293 months. Mr. Davison requests that the court impose a new sentence of 288 months. (*Id.*)

In response, the government argues that Mr. Davison is not eligible for a reduced sentence. (DE # 691.) Specifically, the government argues that there is ample evidence for a finding that Mr. Davison is responsible for 8.4 kilograms of crack. (*Id.* at 2.) Thus, the government argues that Mr. Davison's motion for a reduced sentence should be denied. (*Id.*)

As Mr. Davison and the government both correctly recognize in their briefs, the court never made a finding that Mr. Davison was responsible for exactly 4.5 kilograms of crack. (DE # 688 at 3; DE # 691 at 2.) At his original sentencing, the court concluded that Mr. Davison was responsible for "[w]ay in excess of 1.5 kilograms of crack cocaine base." (Tr. of October 23, 2003, sentencing hearing at 81.) When the court denied Mr. Davison's motion under Amendment 706, it concluded that "it was reasonably foreseeable to [Mr. Davison] that distribution of a quantity in excess of 4.5 kilograms of crack cocaine would occur during [the five-year period that Mr. Davison was a member

---

[2] As noted above, to reach the maximum base offense level of 38, a defendant must be found responsible for 8.4 kilograms or more of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2013). For a base offense level of 36, a defendant must be found responsible for at least 2.8 kilograms but less than 8.4 kilograms of cocaine base. *Id.*

4

of the conspiracy]." (DE # 602 at 4.) Additionally, the Seventh Circuit, in affirming this court's order denying Mr. Davison's motion under Amendment 706, did not find that Mr. Davison was responsible for exactly 4.5 kilograms of crack. (DE # 666-1); *see also Davis,* 682 F.3d at 619 ("Considering that Davison was a member of the conspiracy for a number of years, there was sufficient evidence in the PSR to support the district court's finding that it was foreseeable to him that he was participating in a conspiracy that was distributing more than 4.5 kilograms of crack cocaine.").

The question for purposes of determining Mr. Davison's current motion, therefore, becomes whether Mr. Davison is responsible for 8.4 kilograms or more of crack cocaine. That amount, as noted above, is now the threshold for the maximum base offense level of 38. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2013). The government argues that Mr. Davison is responsible for 8.4 kilograms of crack, and therefore argues that Mr. Davison is not eligible for a reduction under Amendment 750. (DE # 691 at 2-4.) In his motion, Mr. Davison does not directly identify an amount of crack that he believes he should be held responsible for, but argues that because the court has never made a finding that he was responsible for 8.4 kilograms or more of crack, the court should find him responsible for less than that amount. (*See* DE # 688 at 3.)

In its order denying Mr. Davison's motion for a reduced sentence under Amendment 706, the court discussed the conspiracy that Mr. Davison was a part of and the extent of Mr. Davison's involvement in that conspiracy:

The conspiracy of which Mr. Davison was a member, as stated by the Court of Appeals, sold a quantity of drugs which easily "eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876. The question is, how much of that quantity was reasonably foreseeable to Mr. Davison, when, as he argues, the court saw his role in the conspiracy mainly as a street-level dealer. As summarized in paragraph 14 of the original PSR, a confidential informant stated (consistent with information provided by others in the case, for example, testimony of Troy Miller at Davison's sentencing hearing) that for a seven-month period in 2000, Mr. Davison, along with 4 or 5 other members of the Concord Affiliated gang, took turns selling crack cocaine at a location known as "the hill," and that each was selling approximately an "eight-ball" (1/8 ounce, or approximately 3.5 grams) a day. The probation officer estimates in paragraph 14 of the PSR that 3.5 grams a day sold by each of five people over a seven-month period is distribution of approximately 3.675 kilograms of crack cocaine which Mr. Davison was intimately involved in, and aware of.

That is for a seven-month period only, and the evidence of record in this case shows that Mr. Davison was selling on "the hill" for a longer period of time than that, and, as the court found, was a member of the conspiracy for at least five years, from 1997 through 2002. It is impossible to conclude anything other than that it was reasonably foreseeable to him that distribution of a quantity in excess of 4.5 kilograms of crack cocaine would occur during that time period, which is consistent with the court's original finding that he was responsible for "[w]ay in excess of 1.5 kilograms of crack cocaine base."

(DE # 602 at 3-4.)

The Seventh Circuit also detailed Mr. Davison's role in the conspiracy:

The PSR, which the district court adopted, noted that Davison had been a member of the conspiracy as early as 1997, and that he sold crack cocaine in the Concord area from 1997 until 2000. The PSR also described Davison's role as a shooter for the CCA street gang and his involvement in two murders. Most importantly, Davison and a group of four or five other CCA street gang members were observed selling 3.5 grams of crack cocaine on "the Hill" per day over a seven-month period in 2000. In total, this group of individuals sold about 3.675 kilograms of crack cocaine in just seven months. Considering that Davison was a member of the conspiracy for a number of years, there was sufficient evidence in the PSR to support the district court's

finding that it was foreseeable to him that he was participating in a conspiracy that was distributing more than 4.5 kilograms of crack cocaine.

*Davis,* 682 F.3d at 619.

In ruling on a Section 3582(c)(2) motion, a court may not rely on new factual findings that are inconsistent with the original findings made at sentencing. *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009). However, "nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *see also Davis,* 682 F.3d at 618 ("In ruling upon [defendant's] § 3582(c)(2) motion, it was entirely appropriate for the district [court] to make new findings of fact as to the quantity of drugs attributable to [defendant], so long as those findings are consistent with the findings from the original sentencing hearing."); *United States v. Jackson*, 365 F. App'x 690, 691 (7th Cir. 2010) ("A district court can make new findings when addressing a motion to reduce a sentence when there is ample evidence on the record to support the new finding and that finding does not conflict with the district court's previous conclusion.").

As this court (DE # 602 at 4) and the Seventh Circuit have recognized, the conspiracy that Mr. Davison was involved in was extremely large, as the "drug quantities sold in furtherance of the conspiracy . . . eclipsed 16.9 kilograms of crack cocaine." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *see also Davis,* 682 F.3d at 617 ("[W]e have previously concluded that the CCA street gang was responsible for distributing at least 16 kilograms of crack cocaine throughout the course of the

conspiracy's life."). Additionally, the PSR, which the court adopted, detailed how during one seven-month period in 2000, members of the conspiracy distributed approximately 3.675 kilograms of crack. (DE # 678-1 at 4-5.)

The PSR also detailed how several informants reported Mr. Davison selling crack in the Concord neighborhood of Gary from 1997 to 2000. (DE # 678-1 at 4.) Assuming that Mr. Davison sold crack in Concord for approximately 36 months, and assuming that the members of the conspiracy distributed crack at approximately the same rate that they had during the seven-month period in 2000 (0.525 kilograms a month[3]), the members of the conspiracy would have distributed approximately 18.9 kilograms of crack during that 36-month period.

At Mr. Davison's sentencing, however, the court found that Mr. Davison was a member of the conspiracy from at least 1997 until the date of his arrest and detention, which was in 2002. (*See* Tr. of October 23, 2003, sentencing hearing at 80; *see also* DE # 678-1 at 1.) The court came to this conclusion based on, among other things, testimony at Mr. Davison's sentencing hearing, which the court found credible, that Mr. Davison was selling crack in the Concord area of Gary even after 2000. (*See* Tr. of October 23, 2003, sentencing hearing at 14-15, 79-80.)

Although Mr. Davison was only a street-level dealer, he is not only responsible for quantities of crack cocaine which he himself controlled or distributed, as a

---

[3] The distribution of 3.675 kilograms of crack over a seven-month period works out to be approximately 0.525 kilograms a month.

conspirator he is also responsible for the reasonably foreseeable quantity of crack sold by his co-conspirators. *United States v. Seymour*, 519 F.3d 700, 711 (7th Cir. 2008). Mr. Davison was a member of this conspiracy for at least five years, and was selling crack in the Concord area of Gary for at least three years, but possibly longer. Additionally, Mr. Davison was one of the conspiracy members that sold approximately 3.675 kilograms of crack during one seven-month period. Considering these facts, and the record as a whole, the court has no trouble concluding, by a preponderance of the evidence, that it was reasonably foreseeable to Mr. Davison that the distribution of 16.9 kilograms of crack occurred. Mr. Davison is therefore responsible for that amount.[4]

Under the current guidelines, the 16.9 kilograms of crack that Mr. Davison is responsible for results in a base offense level of 38, and a total offense level of 40 (including the two-level increase for the firearms violation). U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1); *see also* PSR Addendum at 2-3 (DE # 678). A total offense level of 40 combined with a criminal history of I results in a guideline range of 292 to 365 months. Thus, Mr. Davison's applicable guideline range has not changed. His guideline range under Amendment 750 remains, as it was under Amendment 706, 292 to 365 months. Because Mr. Davison's guideline range has not been lowered, he does

---

[4] In the addendum to the PSR, the United States Probation Office concluded that Mr. Davison can be held responsible for the distribution of 16.9 kilograms of crack. (DE # 678 at 2 ("The defendant's criminal activity was distribution of more than 8.4 kilograms of crack cocaine (16.9 kilograms of crack cocaine).").

not qualify for a reduction. *United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010). Mr. Davison's motion for a reduced sentence (DE # 688) is therefore **DENIED**.

Mr. Davison has also filed a motion requesting that the court release him on bail. (DE # 672.) Because the court has concluded that Mr. Davison is not eligible for a reduced sentence, that motion is **DENIED**.

**SO ORDERED.**

Date: January 23, 2014

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT