UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:02 CR 44 |
| | ) | |
| WILLIAM DAVISON | ) | |

## OPINION AND ORDER

Defendant William Davison has filed a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2). (DE # 688.) Mr. Davison was convicted of two counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the time of Mr. Davison's original sentencing, his guideline offense level was found to be 40, and criminal history category of I, which corresponded to a guideline range of 292 to 365 months imprisonment. The court sentenced Mr. Davis to a term of 360 months imprisonment.

Mr. Davison was also charged with conspiracy to distribute crack cocaine, and although he was found not guilty of that charge, in the original presentence report ("PSR") at paragraph 24, the probation office concluded there was sufficient evidence to conclude he engaged in a jointly undertaken criminal enterprise, was a member of the conspiracy, and that distribution of in excess of 1.5 kilograms of crack cocaine was foreseeable to him. (DE # 678-1 at 7.) When the court sentenced him, it found that he was a member of the conspiracy "at least from 1997 up to and including the date . . . of his arrest," which occurred in June, 2002. (Tr. of October 23, 2003, sentencing hearing at 80.) The court also found his role in the conspiracy was as a street-level distributor, and "[m]ore likely than not, he was a shooter," that is, he had been involved, as either an

accomplice or the actual triggerman, in murders carried out in furtherance of the conspiracy. (*Id*.) Last, the court concluded that he was responsible for "[w]ay in excess of 1.5 kilograms of crack cocaine base." (*Id*. at 81.)

At the time of Mr. Davison's sentencing, any consideration as to how greatly in excess of 1.5 kilograms he bore responsibility was unnecessary, because the sentencing guidelines set a quantity of 1.5 kilograms of crack cocaine as the threshold for the maximum base offense level of 38. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2003). Mr. Davison's adjusted offense level was 40 as the result of a two-level increase for possession of a dangerous weapon. (Tr. of October 23, 2003, sentencing hearing at 80-82; *see also* DE # 678 at 2.)

Mr. Davison moved for a reduced sentence in 2009 after the United States Sentencing Commission promulgated Amendment 706, which, generally speaking, lowered the sentencing range for offenses involving crack by two levels. (DE # 579.) As the result of Amendment 706, a quantity of 4.5 kilograms of crack cocaine became the threshold for the maximum base offense level. The court denied that motion after determining that Mr. Davison was responsible for in excess of 4.5 kilograms of crack, and therefore, he was not eligible for a sentence reduction. (DE # 602.) Mr. Davison appealed, and the United States Court of Appeals for the Seventh Circuit affirmed this court's decision. (DE # 666-1); *see also United States v. Davis,* 682 F.3d 596, 619-20 (7th Cir. 2012).

In July 2013, Mr. Davison moved for a sentence reduction under Amendment 750. (DE # 688.) Amendment 750 raised the threshold for the maximum base offense level of 38 to 8.4 kilograms of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). In his motion, Mr. Davison conceded that he was responsible for more than 4.5 kilograms of crack, but argued that he was responsible for less than 8.4 kilograms of crack. (DE # 688 at 3.) The court denied Mr. Davison's motion after concluding that he was responsible for 16.9 kilograms of crack. (DE # 700 at 9.)

The court reached that conclusion based on the following analysis:

In its order denying Mr. Davison's motion for a reduced sentence under Amendment 706, the court discussed the conspiracy that Mr. Davison was a part of and the extent of Mr. Davison's involvement in that conspiracy:

> The conspiracy of which Mr. Davison was a member, as stated by the Court of Appeals, sold a quantity of drugs which easily "eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876. The question is, how much of that quantity was reasonably foreseeable to Mr. Davison, when, as he argues, the court saw his role in the conspiracy mainly as a street-level dealer. As summarized in paragraph 14 of the original PSR, a confidential informant stated (consistent with information provided by others in the case, for example, testimony of Troy Miller at Davison's sentencing hearing) that for a seven-month period in 2000, Mr. Davison, along with 4 or 5 other members of the Concord Affiliated gang, took turns selling crack cocaine at a location known as "the hill," and that each was selling approximately an "eight-ball" (1/8 ounce, or approximately 3.5 grams) a day. The probation officer estimates in paragraph 14 of the PSR that 3.5 grams a day sold by each of five people over a seven-month period is distribution of approximately 3.675 kilograms of crack cocaine which Mr. Davison was intimately involved in, and aware of.
>
> That is for a seven-month period only, and the evidence of record in this case shows that Mr. Davison was selling on "the

3

> hill" for a longer period of time than that, and, as the court found, was a member of the conspiracy for at least five years, from 1997 through 2002. It is impossible to conclude anything other than that it was reasonably foreseeable to him that distribution of a quantity in excess of 4.5 kilograms of crack cocaine would occur during that time period, which is consistent with the court's original finding that he was responsible for "[w]ay in excess of 1.5 kilograms of crack cocaine base."

(DE # 700 at 5-6.) The court also looked to the Seventh Circuit's opinion affirming the denial of Mr. Davison's motion for a reduced sentence under Amendment 706:

> The PSR, which the district court adopted, noted that Davison had been a member of the conspiracy as early as 1997, and that he sold crack cocaine in the Concord area from 1997 until 2000. The PSR also described Davison's role as a shooter for the CCA street gang and his involvement in two murders. Most importantly, Davison and a group of four or five other CCA street gang members were observed selling 3.5 grams of crack cocaine on "the Hill" per day over a seven-month period in 2000. In total, this group of individuals sold about 3.675 kilograms of crack cocaine in just seven months. Considering that Davison was a member of the conspiracy for a number of years, there was sufficient evidence in the PSR to support the district court's finding that it was foreseeable to him that he was participating in a conspiracy that was distributing more than 4.5 kilograms of crack cocaine.

(*Id.* at 6-7.) Finally, the court concluded that Mr. Davison was responsible for 16.9 kilograms of crack:

> As this court (DE # 602 at 4) and the Seventh Circuit have recognized, the conspiracy that Mr. Davison was involved in was extremely large, as the "drug quantities sold in furtherance of the conspiracy . . . eclipsed 16.9 kilograms of crack cocaine." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *see also Davis,* 682 F.3d at 617 ("[W]e have previously concluded that the CCA street gang was responsible for distributing at least 16 kilograms of crack cocaine throughout the course of the conspiracy's life."). Additionally,

the PSR, which the court adopted, detailed how during one seven-month period in 2000, members of the conspiracy distributed approximately 3.675 kilograms of crack. (DE # 678-1 at 4-5.)

The PSR also detailed how several informants reported Mr. Davison selling crack in the Concord neighborhood of Gary from 1997 to 2000. (DE # 678-1 at 4.) Assuming that Mr. Davison sold crack in Concord for approximately 36 months, and assuming that the members of the conspiracy distributed crack at approximately the same rate that they had during the seven-month period in 2000 (0.525 kilograms a month[1]), the members of the conspiracy would have distributed approximately 18.9 kilograms of crack during that 36-month period.

At Mr. Davison's sentencing, however, the court found that Mr. Davison was a member of the conspiracy from at least 1997 until the date of his arrest and detention, which was in 2002. (*See* Tr. of October 23, 2003, sentencing hearing at 80; *see also* DE # 678-1 at 1.) The court came to this conclusion based on, among other things, testimony at Mr. Davison's sentencing hearing, which the court found credible, that Mr. Davison was selling crack in the Concord area of Gary even after 2000. (*See* Tr. of October 23, 2003, sentencing hearing at 14-15, 79-80.)

Although Mr. Davison was only a street-level dealer, he is not only responsible for quantities of crack cocaine which he himself controlled or distributed, as a conspirator he is also responsible for the reasonably foreseeable quantity of crack sold by his co-conspirators. *United States v. Seymour*, 519 F.3d 700, 711 (7th Cir. 2008). Mr. Davison was a member of this conspiracy for at least five years, and was selling crack in the Concord area of Gary for at least three years, but possibly longer. Additionally, Mr. Davison was one of the conspiracy members that sold approximately 3.675 kilograms of crack during one seven-month period. Considering these facts, and the record as a whole, the court has no trouble concluding, by a preponderance of the evidence, that it was reasonably foreseeable to Mr. Davison that the distribution of 16.9 kilograms of crack occurred. Mr. Davison is therefore responsible for that amount.

(*Id.* at 5-9.)

---

[1] The distribution of 3.675 kilograms of crack over a seven-month period works out to be approximately 0.525 kilograms a month.

Mr. Davison appealed the court's decision, and the Seventh Circuit reversed the court's finding that Mr. Davison was responsible for 16.9 kilograms of crack. (DE # 717-2); *United States v. Davison*, 761 F.3d 683 (7th Cir. 2014). Specifically, the Seventh Circuit concluded that the court had erred by equating "jointly undertaken criminal activity" to conspiracy liability. *Davison*, 761 F.3d at 685-86. The Seventh Circuit explained:

> Relevant conduct is conduct by the defendant that even if not charged is to be used to determine his base offense level, U.S.S.G. § 1B1.3 and Application Note 1. It consists, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction. . . ." § 1B1.3(a)(1)(B). Application Note 1 explains that the "principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator " (emphasis added).

*Id.* at 785.

The court explained further:

> The focus in other words is on acts, reasonably foreseeable to the defendant even though committed by others, that furthered a criminal activity that he had agreed to undertake jointly with those others. . . . So whether the defendant in this case is liable for the sale of illegal drugs by other members of the conspiracy that he had joined, in an amount in excess of the limit (8.4 kilograms) for the sentence reduction that he seeks, depends not only on whether the sale quantity was foreseeable to him (which the judge found that it was), but also on whether he joined with those other conspirators in a joint undertaking of which the making of those sales was an objective, or had agreed to join in such an undertaking. And that is a question that neither the district judge nor the government addressed.

> In effect the judge and the government equated "jointly undertaken criminal activity" to conspiracy, and that is incorrect. "Conspiracy liability, as defined in *Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), is generally much broader than jointly undertaken criminal activity under § 1B1.3." *United States v. Soto–Piedra*, supra, 525 F.3d at 531. By agreeing with others to sell crack the defendant joined a conspiracy. And he may have agreed to help his co-conspirators achieve a goal of selling an amount of crack that would exceed 8.4 kilograms, and if so the sales of that amount (in excess of the amount he sold personally, which was the basis of his offense of conviction) would be relevant conduct of his because they would be the fruit of a criminal activity that he had jointly undertaken with his co-conspirators. But in determining the defendant's relevant conduct the district judge did not rely on evidence that the defendant had agreed to help his co-conspirators sell crack; nor does the government in its brief rely on such evidence. The government and the district judge stop with foreseeability, and that's not enough.
>
> As noted earlier, the defendant admits responsibility for selling more than 4.5 kilograms of crack himself. It appears that his average sales were 3.5 grams a day, which over four years would amount to 5.1 kilograms—much less than 8.4 kilograms. Suppose he had joined the conspiracy knowing of its objectives, but his only goal was to have a better shot at obtaining crack that he could resell. If he neither did nor agreed to do anything to promote sales by the other gang members, their sales (which together with his sales exceeded the 8.4 kilogram limit for a sentence reduction) were not relevant conduct of his, even if foreseeable.

*Id.* at 685-86 (some citations omitted).

The court ordered the government and Mr. Davison to brief the issues raised by the Seventh Circuit in its opinion, and both parties have now filed their briefs. (DE # 756; DE # 757.) In its brief, the government argues that the court already addressed Mr. Davison's "jointly undertaken criminal activity" in its order denying Mr. Davison's motion, but just did not explicitly say so. (DE # 756 at 3.) The government argues that the portions of the record that the court relied on in its original order denying Mr. Davison's motion also showed "that Davison participated in 'jointly

7

undertaken activity' of the sale of at least 18.9 kilograms of crack, during the three year time period, even though the record supported a longer period." (*Id.* at 4-5.) Thus, the government argues that "there appears to be adequate evidence in the record to support the district court's finding that Davison was involved in a 'jointly undertaken activity' responsible for the sale of 18.9 kilograms of crack." (*Id.* at 5.)

The problem with this argument is that the Seventh Circuit specifically found that the court had not relied on any evidence indicating that Mr. Davison helped his co-conspirators sell crack. *United States v. Davison*, 761 F.3d at 686 ("But in determining the defendant's relevant conduct the district judge did not rely on evidence that the defendant had agreed to help his co-conspirators sell crack; nor does the government in its brief rely on such evidence."). And the government has failed to offer any new evidence from the record that indicates that Mr. Davison agreed to help his co-conspirators sell crack. (*See* DE # 756.) Furthermore, the court reviewed the transcripts from Mr. Davison's trial and sentencing, and it was unable to find any evidence that Mr. Davison agreed to help his co-conspirators sell crack.

The Seventh Circuit also recognized that Mr. Davison was involved in the conspiracy in another way, however:

> The record does, however, contain evidence that the defendant had done more than just sell his own crack—maybe enough more to establish that the entire sales of the conspiracy, or at least some amount in excess of 8.4 kilograms, were relevant conduct of his, in which event he wouldn't be eligible for a sentence reduction. The judge remarked that in sentencing the defendant back in 2003 he had "also found [that] … 'more likely than not, he [Davison] was a shooter,' that is, he had been involved, as either an accomplice or the actual triggerman, *in murders carried out in furtherance of the*

8

> *conspiracy* " during his three years of membership in the Concord Affiliated gang (emphasis added). (Only the passage in single quotation marks is a quotation from the judge's remarks when he sentenced the defendant in 2003) If those murders were indeed intended to assist the sales activity of other gang members, the sales made by those other members would be illegal activity undertaken by our defendant jointly with those others. But it is uncertain whether that is what the judge meant. He may just have meant that the murders were intended to further the defendant's own sales. It is noteworthy that nowhere in his opinion denying the sentence reduction does the judge treat the murders as relevant conduct; rather he treats the gang's entire sales during the period of the defendant's membership as relevant conduct because reasonably foreseeable to the defendant.

*Davison*, 761 F.3d at 686 (emphasis in original).

In its brief, the government concedes that "[n]o witness testified specifically that the two murders were 'intended to assist the sales activity of other gang members,' or implied this." (DE # 756 at 6.) The government goes on to argue, however, that because Mr. Davison was a "shooter" for the conspiracy, and because one of the main goals of the conspiracy was to sell crack, Mr. Davison should be found to be responsible for the amount of drugs the conspiracy was found to have distributed. (*Id.*)

The problem with this argument is that there is no evidence that the two murders detailed at Mr. Davison's sentencing hearing were "intended to assist the sales activity of other gang members . . . ." *Davison*, 761 F.3d at 686. Evidence was presented that Davison shot and killed Gregorio Uvalle. Uvalle, who was not a member of any gang, was apparently accidentally shot when Mr. Davison and defendant Benjamin Johnson had a verbal altercation with two people in another section of Gary, and Davison started shooting. (*See* Tr. of October 23, 2003, sentencing hearing at 22-23, 35-38, 46-48.) The altercation between Davison, Johnson, and the other individuals was

9

part of an ongoing rivalry with another gang. (DE # 678- at 7.) But there is no evidence that this shooting was in any way intended to further the sales of the other gang members.

The other murder Mr. Davison was involved in was the murder of Dwayne Tatum, who was an associate of some of the men from the Concord area of Gary. There was evidence presented that Bobby Suggs and Mr. Davison shot and killed Tatum. (*See* Tr. of October 23, 2003, sentencing hearing at 41-46.) But there was no evidence presented that this murder was in any way intended to further the sales of the other gang members. Instead, the evidence showed that Tatum was murdered because he had devised a kidnaping scheme in an effort to extort money from Bobby Suggs. (DE # 678-1 at 7.)

Without any evidence that either of these murders were intended to further the drug sales of the other gang members, the court does not believe that the murders or Davison's role as a shooter for the gang can be used as relevant conduct to hold Mr. Davison responsible for the entire sales of the conspiracy. The court, therefore, will give the government a chance to direct the court to evidence that shows that Mr. Davison engaged in specific conduct that was intended to further the drug sales of the other gang members. The court does not believe this evidence exists. As best the court can tell, there is no evidence that Mr. Davison agreed to help any of his co-conspirators sell crack, and the evidence connecting Mr. Davison's involvement as a shooter for the gang is too attenuated from the gang's sale of drugs to hold Mr. Davison responsible for the

10

rest of the gang's sales. But it is possible that the court has overlooked something, and the government is encouraged to direct the court to that evidence if it exists.

There is another issue the court would like the government to address. In its opinion, the Seventh Circuit explained the contours of relevant conduct:

> Relevant conduct is conduct by the defendant that even if not charged is to be used to determine his base offense level, U.S.S.G. § 1B1.3 and Application Note 1. It consists, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, *that occurred during the commission of the offense of conviction. . . .*" § 1B1.3(a)(1)(B).

*Davison*, 761 F.3d at 685 (emphasis added). The full text of § 1B1.3(a)(1)(B) reads as follows:

> [Relevant conduct consists,] in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal *activity . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for* that *offense . . . .*"

§ 1B1.3(a)(1)(B) (emphasis added). In other words, "during the commission of the offense of conviction" is a temporal requirement, given that relevant conduct must occur either in preparation for the offense, afterwards to avoid detection of the offense, or during the offense itself.

Mr. Davison's offenses of conviction in this case were two sales totaling 1.47 grams of crack during a one-week period in June of 2000. (DE # 678-1 at 3-4.) Given that those two sale transactions would have taken only a few seconds or minutes to occur,

11

the court cannot envision how any other relevant conduct occurred "during the commission" of those offenses. Were the court writing on a clean slate it is unlikely that it would find Mr. Davison responsible for any amount substantially higher than the 1.47 grams of crack that he was convicted of selling;[2] although Mr. Davison was selling crack out on the hill for a three-year period, there is no evidence that those sales occurred during the commission of the offenses of conviction, in preparation for those offenses, or in attempting to avoid detection for those offenses. § 1B1.3(a)(1)(B).

But the court is not writing on a clean slate, and in ruling on a Section 3582(c)(2) motion, it may not rely on new factual findings that are inconsistent with its previous findings with regard to drug quantity. *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009); *see also United States v. Jackson*, 365 F. App'x 690, 691 (7th Cir. 2010) ("A district court can make new findings when addressing a motion to reduce a sentence when there is ample evidence on the record to support the new finding and that finding does not conflict with the district court's previous conclusion."). The most recent factual finding with regard to Mr. Davison is that he was responsible for in excess of 4.5 kilograms of crack. (DE # 602.) Given the Seventh Circuit's opinion, the plain language of the § 1B1.3(a)(1)(B), the fact that Mr. Davison has conceded responsibility for more than 4.5 kilograms of crack (DE # 688 at 3), and the evidence before the court in this case, the court believes it has no choice but to hold Mr. Davison responsible for exactly

---

[2] As the court noted earlier, Mr. Davison was acquitted of the conspiracy charge at trial.

4.51 kilograms of crack. This finding would not be inconsistent with the court's previous determination that Mr. Davison was responsible for in excess of 4.5 kilograms of crack.

As noted earlier, however, the government will be given an opportunity to respond to the court's analysis and to provide any evidence it believes justifies holding Mr. Davison responsible for an amount of crack higher than 4.51 kilograms. The government is **GRANTED** thirty days in which to respond to this order. If it fails to respond in the time allowed, the court will enter an order finding Mr. Davison responsible for 4.51 kilograms of crack and adjust his sentence accordingly.

**SO ORDERED.**

Date: October 15, 2015

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT